## RIEKE METAL PRODUCTS CORPORATION v. BARREL FITTING & SEAL CORPORATION OF AMERICA.

### No. 6638.

Circuit Court of Appeals, Seventh Circuit.

Nov. 18, 1938.

Ralph G. Lockwood, of Indianapolis, Ind., and Norman S. Parker, of Chicago, Ill., for appellant.

Thorley Von Holst, Sidney Neuman, and Ames, Thiess, Olson & Mecklenburger, all of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

EVANS, Circuit Judge.

Involved in this appeal are five original and one reissue patents.[1] Two suits were filed, one based upon the first five patents, and the second upon the reissue patent. They were consolidated and tried together. The findings and decree were for defendant.

All patents deal with metal barrel fittings and more particularly with the flange or "bung ring" secured to and surrounding a bung in the metal barrel for the purpose of receiving a screw threaded closure called a "bung"; or to a "cap seal" clamped about the bung and bung ring, for sealing and inclosing them. Still another fitting is an anchor ring which consists of a steel ring clamped between the bung ring and the barrel, having an eyelet through which a wire seal may be inserted and connected with the bung so that the bung may not be removed without breaking the wire seal.[2]

Both plaintiff and defendant are actively engaged in making fittings either like or somewhat similar to those covered by the patents. Large quantities have been sold to and are used by the trade. Rieke, the patentee, is the president of the plaintiff

---

[1] (a) Patent No. 1,344,457 to Anthony Schroeder, issued June 22, 1920.

(b) Patent No. 1,651,632 to Theodore W. Rieke, issued December 6, 1927.

(c) Patent No. 1,732,536 to Theodore W. Rieke, issued October 22, 1929.

(d) Patent No. 1,833,306 to Theodore W. Rieke, issued November 24, 1931.

(e) Patent No. 2,011,013 to Theodore W. Rieke, issued August 13, 1935.

(f) Reissue Patent No. 19,956 to Theodore W. Rieke, issued May 5, 1936.

[2] The screw-threaded member which is to receive the plug is generally called either a "bung-ring" or "bushing," or a flange. The portion of the container wall enveloping the bushing is generally called either the "embossment" or the "socket." A "bung" is the screw-threaded closure which closes the barrel hole. A "cap-

company, which has been engaged in the manufacture and sale of barrel fittings since 1920. Its business in this line has been extensive. Defendant is a new comer in the field and plaintiff argues that its business is built upon the infringement of the patents in suit.

Generally speaking, the purpose of the inventions was to get away from the existing practice of welding the bung ring to the metal barrel. This welding method was expensive and productive of some unsatisfactory results, which were avoided by the so-called "pressed in" or "clamp" bung ring or flange. The asserted advantages in favor of the pressed in type over the welded fitting, we accept, and the controversy turns on the state of the art and the patentability of plaintiff's fittings with the question of infringement, necessitating a study of the scope of the contested claims which also goes back to the state of the existing art.

Typical claims of each patent are quoted in the margin.

The Schroeder specifications are set forth in the margin.[3]

---

seal" is a steel cap clamped about the bung and the bung ring for sealing and enclosing them. An "anchor ring" is a steel ring clamped between the bung ring and barrel having an eyelet through which a wire seal may be inserted and connected with the bung so that the bung may not be removed without breaking the wire seal.

[3] "This invention relates to an improvement in a bung for barrels and is particularly adapted for use in conjunction with metal barrels. The particular object of the invention is to apply a bung to the barrel in such a manner as to prevent leakage thereof."

Claims 1 and 2 read as follows:

"1. A bung for metal barrels, comprising a head having a reduced extension, and a tapered shoulder connecting said extension with said head, in combination with a metal barrel having an opening therein, and a tapered seat around said opening and an extension outwardly beyond said seat, the shoulder of the bung fitting against the seat around the opening and the extension being bent inwardly over the head of the bung to hold the same in place.

'2. The combination of a metal barrel having an opening therein, the edge of the metal around the opening being folded outwardly upon itself to form a seat and a cylindrical extension beyond said seat, and a bung fitting in the opening and against said seat, the cylindrical extension being folded down upon the outer end of the bung to hold the same in place."

The specifications of the first Rieke patent are set forth below.

"This invention relates to improvements in barrel fittings for bungs and is specially applicable to barrels made of sheet metal, and the object of the improvement is to construct and apply a bung ring to one side of a sheet metal wall of a barrel so that it will be held from turning and so as to obviate leakage when the opening is closed by a bung;
* * *."

Claim 1 of the patent reads as follows:

"1. In a fitting for a container having a metal wall formed with an opening, a ring provided at one end with an outwardly extending section having flat side edges arranged at angles to each other to form a polygonally shaped flange, the wall of the container surrounding the opening therein being shaped to provide an envelope having portions engaging the outer and inner faces of said flange and an intermediate portion of polygonal shape engaging the flat sides of said flange, whereby said ring is secured to the metal wall and the marginal outer portion of said envelope on the outer face of said flange forms an annular seat for the flange or enlarged portion of a fitting element."

Claim 1 of the second Rieke patent reads:

"1. The herein disclosed process of securing a bung receiving member having a laterally extending faceted flange to a metallic sheet, which consists in first forming an opening in the sheet, then in distending the metal around the opening and concentric thereto to form a recess having faceted side walls conforming with the facets on the flange of the bung receiving member and an inwardly extending wall to engage one face of the flange of the bung receiving member, and finally insetting the walls of the recess to envelope the flange."

The specifications of the third Rieke patent read:

"One object of the invention is to provide a bung ring which may be secured in fixed and sealed relation upon one side of one wall of a barrel and form a support for a plug when screwed into the ring and which at the same time affords means for completely draining the barrel when inverted.

"Another object of the invention is to provide an improved seal which may be so related with the plug that any unauthorized opening or tampering with the plug will be readily indicated."

The single claim of this patent reads:

To a great extent disposition of this appeal depends upon what we include in the prior art. Perhaps it may be better said to involve an inquiry into two matters: (1) What is the cited prior art? (2) Is all of the cited prior art, like or kindred art to barrel fittings? Counsel differ sharply on the propriety of including the English patent to Whitlock, No. 106,348, issued May 24, 1917.

The chief difference as far as the inventive concept is concerned between the Schroeder patent and the Rieke first patent lies in the shape of the bung ring. In the Schroeder structure there was some leakage due to yielding and twisting. This, Rieke avoided, by making the outer wall of the bung ring polygonal. He thus prevented rotation. There were also other slight differences in method of construction. Let Rieke state his invention. In his specifications he says that his "invention relates to * * * barrel fittings for bungs * * * and the object of the improvement is to construct and apply a bung ring to one side of a sheet metal wall so that it will be held from turning and so as to obviate leakage when the opening is closed by a bung."

The British patent to Citex, issued May 16, 1912, is also cited and relied on by defendant. It covered improvements in fire extinguishers. We dismiss it because we are not satisfied it was part of the prior art nor of the kindred or analogous art.

The Whitlock patent, however, cannot be thus distinguished. The title "Improvements in the manufacture of aluminum vessels or the like" is not suggestive of the subject matter of said patent. An examination of the specifications and drawings and the claim, however, shows it relates to the subject of barrel fittings and an avoidance of the citation is not possible. The inventor stated:

"The difficulty of soldering or sweating other metals to aluminium and the unsatisfactory character of screw threads cut in aluminium, present a trouble in the manufacture of aluminium vessels or the like to which attachments such as pipes, rods, feet or bosses are to be made.

"By the present invention a piece of metal other than aluminium and of character suitable for the kind of attachment required is fastened to the sheet aluminium by a sheathing of the latter metal conforming closely with the periphery of the piece and more or less extending over one or both faces of the piece.

"Taking as an example a very frequent requirement, namely the attachment of a pipe to an aluminium tank, the socket into which the pipe is to be screwed cannot well be made of aluminium and cannot well be attached to the sheet aluminium by soldering or sweating.

"By this invention the steel, brass or like socket is provided with a sheathing of alu-

"In a barrel having a pressed-in bung ring, a sheet metal wall formed with an opening and provided with a preformed flange about said opening on one side of said wall, a bung ring arranged to be positioned from the opposite side of said wall and comprising a body portion and an outstanding flange at its outer end having its outer face fitted against said preformed flange, whereby the latter provides a seat for a gasket, the metal of the wall adjacent to and surrounding said preformed flange being folded around the side edges of said ring flange and inwardly therebelow into concentric relation to said body portion and above the plane of said sheet metal wall, the inner end of said bung ring extending beyond the plane of the inner surface of said wall and formed with notches to a depth substantially co-incident with said plane for permitting complete draining of the barrel."

The fourth Rieke patent contains the following specifications:

"One object of the invention is to provide an improved sealing means for a

plug after being positioned in its bung ring, which may be secured in fixed and sealed relation upon one wall of a barrel, whereby the plug cannot be loosened or removed without detection."

Claim 1 of this patent reads:

"1. A device for sealing a removable member upon its support comprising a side wall one circumferential edge of which is adapted to be secured to the wall of a support and an annular flange extending from the opposite circumferential edge of said side wall and adapted to overlie the marginal edge of a removable member when associated with the support, said flange having a slit or opening disposed substantially in alignment with the periphery of the removable member to weaken a portion of the flange, the marginal portion of said flange being shaped in cross section to form a rib having a rounded outer surface, and the free edge of said rib being turned inwardly toward the first mentioned circumferential edge of said side wall."

minium which conforms with its outer periphery and extends over that end face which is to be the outer face in relation to the tank. To prevent rotation of the socket, the said periphery is preferably polygonal. The sheathing may be a separate piece hammered or pressed to the outer surface of the socket and then sweated to the sheet aluminium, or the metal for the sheathing may be turned up from the sheet metal around the aperture made for the socket and may be pressed or hammered to the outer surface of the socket."

Continuing, the inventor said:

"By this invention the steel, brass or like socket is provided with a sheathing of aluminium which conforms with its outer periphery and extends over that end face which is to be the outer face in relation to the tank. To prevent rotation of the socket, the said periphery is preferably oval or polygonal. The sheathing may be a separate piece hammered or pressed to the outer surface of the socket and then sweated to the sheet aluminium, or the metal for the sheathing may be turned up from the sheet metal around the aperture made for the socket and may be pressed or hammered to the outer surface of the socket."

It has been argued that Whitlock's invention was directed to aluminum vessels only.

We are only misled if we stress the material of the container to which the fittings are to be attached. It might be a steel barrel or it could be an aluminum vessel. A better term than either barrel or vessel would probably have been "a container." Desirous of using a barrel, vessel, or container which is to be filled with liquid such as beverage, gas, oil, or some other commodity in common use, the manufacturer selects a metal container in the end of which is a hole through which the liquid is poured, filling it, or out of which it flows when emptying the barrel. This hole is called the bung hole. It has to be closed tightly and securely when the barrel is transported.

Closing the bung hole was originally accomplished by welding the fitting to the barrel, a process found to be expensive and otherwise not entirely satisfactory. Doubtless, the increased use of metal barrels focused attention on the problem and substitution of bung rings, "pressed in" fittings (that is, socket structures and caps) for the welded fittings was the result.

The artisan, engineer, or inventor working in this field, confronted with the task of eliminating the welding process, yet of securely closing the bung hole, quite naturally sought solution through the "pressed in fittings."

There was an added reason for a change where the metal container was made of aluminum. However, whether the difference in metal accounted for the demand, or whether the reasons for the change were economy or less leakage, the problems of substituting process and products so as to avoid the necessity of welding were the same. In other words, it was in the same art that Whitlock, Schroeder, and Rieke labored, although the advantages to one differed or were greater than to the other.

The field was never particularly large nor baffling in its intricacies, although we confess to the existence of a fear lest we assume, after the mechanic has brought forth a novel device, and from the rear, we have seen how it works, that only mechanical skill of ordinary calibre, such as we, ourselves, possess, was required to solve the problem. Notwithstanding our fear of under-appreciation of the problem and its solution, after the event has occurred, we are satisfied the problem in the instant case was not difficult.

The lines which separated the activities of the artisan, the mechanic, and the inventor were at best faint and indistinct in this limited field. After Whitlock had spoken and disclosed his methods, by description and drawings, wherein he said the periphery of the socket is preferably oval or polygonal, and described the structure which permitted the separate piece to be hammered or pressed to the outer surface of the socket, the field which was left for exploration was indeed small.

Even when Whitlock brought forth his invention in June, 1916, he acknowledged his indebtedness to the existing art by saying that he "was aware that the attachment of a pummel or the like to an article of sheet brass or copper by making the sheet metal conform with the periphery of the pummel and turning it over the face thereof, was commonly used."

Stripping the question of confusing words of technical meaning, our question is: In 1920, was it patentable invention to provide types known as "pressed in rings" to tightly and economically enclose holes in metal containers? The second question in-

volves the substitution of polygonal for the round shaped flange. Still a third question is raised, Did the addition of sealing means add an element which made the combination, a valid patentable one?

If the substitution of the polygonal for the round shape flange where a better grip is desired calls for inventive skill, we have greatly overestimated the knowledge and practices of that large group of workmen called mechanics. We refuse to ascribe such limited knowledge to them.

To support our judicial knowledge of the skill of mechanics the record contains some evidence. The patent to Whitlock who, although not basing his invention thereon, observed, "to prevent the rotation of the socket the periphery is preferably polygonal."

To show the use of the "pressed in" type of rings was known to the mechanic and used by him before the Rieke patents were applied for, the English Citex Fire Extinguisher Patent is illluminating. There, the applicant said:

"Several methods are in use for closing the comparatively large opening necessary in these machines, * * *. By this invention, the metal of the receptacle is brought by processes of pressing, forging and spinning to a shape like that shown in the accompanying drawings, Fig. I, *a*, where the outlet is required. Fig. II shows how a metal collar with a suitable flange *b* is placed in the neck and the upper part of the neck is then spun or forged over the collar as shown at *c*."

To find any justification for judicial support, appellant's invention must be viewed as one which adopted something more than the pressed in type of rings. It must, and may properly, rely upon the particular type of pressed in rings disclosed in its various patents, and to the adoption of the particular type disclosed may be added the fact that Rieke used a polygonal top to "effect a better grip on the ring." In other words, we are not dealing with a theory or an abstract practice, but a specific, well-limited structure, one element of which was the polygonal shaped socket. It is the combination as a whole that appellant relies on and properly demands that we view the combination, as such, and not the individual elements thereof, alone.

The master and the court specifically found that each of the patents in suit was lacking in invention and hence invalid. They also found that claims 15 to 18 of the reissue patent were invalid, because the reissue enlarged the original patent, and violated the reissue statute, and because of laches in applying for it.

We agree with the District Court that the claims of the Schroeder patent are void in view of the Whitlock patent and also that there was no patentable invention disclosed by the Rieke patents in view of the Whitlock patent and the disclosures of the void Schroeder patent. Even without Whitlock the plaintiff's patent protection would have been based on questionable and insecure grounds, for, in our view, the Whitlock patent was granted to one who only applied the skill of a mechanic to a mechanical problem. If this be true of Whitlock, then, much greater is it, combined with the Whitlock, disclosure, an obstacle in the path of Schroeder. That obstacle is insurmountable.

The specific features which showed appellant's particular "pressed in" type of bung ring are not impressive. Moreover, Schroeder closes his description with these words:

"It will be obvious that various changes and modifications may be made in the construction herein shown and described and I do not wish to limit myself further than is required by the state of the art or that which comes within the scope of the appended claims."

The other patents add specific features which do not involve patentable novelty, such as means in the nature of sealing devices which prevent the opening of the barrel without detection. The means were old and their adoption did not introduce patentable novelty into the combination.

It is unnecessary to consider the numerous objections to the reissue patent. We adopt the conclusion and the reasons given by the District Court for holding the patents involved in this suit invalid for want of patentable invention and also find that the claims of the reissue patent were not infringed.

The decree is affirmed.