MORRILL et al. v. AUTOMATIC INDUS-
TRIES, Inc., et al.

No. 5462.

United States District Court
W. D. Missouri, W. D.

Sept. 27, 1950.

698

Thomas E. Scofield, Kansas City, Mo., Huebner, Beehler, Worrel, Herzig & Caldwell, Los Angeles, Cal., for plaintiffs.

C. Earl Hovey, Kansas City, Mo., Naylor & Lassagne, San Francisco, Cal., for defendants.

RIDGE, District Judge.

Plaintiff Melvin A. Morrill is the owner of Letters Patent No. 2,447,354, issued August 17, 1948, on application made therefor, filed July 8, 1946, for a Rotary Side Delivery Rake. Co-plaintiff, West Coast Sales Company, a corporation of the State of California, is the exclusive licensee under said letters patent for practically the whole of the United States, including territory coterminous with the jurisdiction of this Court. Defendant Automatic Industries, Inc., is a corporation organized under the laws of the State of Missouri, with its

principal office and place of business in Kansas City, Missouri. The Court has jurisdiction of this cause under the patent laws of the United States, 35 U.S.C.A. § 70 and Section 1338, of Title 28 U.S.C.A.

## The Issues

Plaintiffs here charge infringement by defendant of Claims 1 to 5, and 11 to 23, inclusive, of the above letters patent. Defenses made to said charge are (1) that said letters patent are invalid (a) for lack of invention, and (b) for assertion by patentee of invalidly broad claims; (2) that the rotary side delivery rake made and sold by defendant does not infringe plaintiffs' letters patent, though the same may be found to be valid; and (3) plaintiffs have so misused the patent rights owned by them as to disqualify themselves from seeking equitable relief herein.

We shall consider the issue of validity of the letters patent first. Usually, in considering such an issue it is necessary to begin with an analysis of the claims of letters patent. In light of the particular contentions made by defendant concerning the invalidity of Morrill's letters patent, and factual issues here involved, we believe that we might postpone an analysis thereof until we reach other issues. However, a brief history of the letters patent and a description of Morrill's rake should be made now in order to clarify understanding of the issues as we reach them.

## History of Letters Patent

Prior to the year 1946, there were two conventional ways of raking cut hay and other grasses into windrows. One was by using a sulky rake drawn transversely over the ground and tripping the same where desired to form the windrow. The other way was by use of side delivery hay rakes of the reel and basket type. Reel and basket side delivery rakes generally consist of an elongated basket-like member which is mounted for earth-traversing movements, and a reel, rotatively mounted within the basket, adapted to pick up hay from the earth, draw the hay into the basket and rotate the same, urging it toward the end of the basket for discharge therefrom.

Such rakes usually have a power driven means for rotating the reel to perform the above-described functions. The conventional side delivery rakes are subject to certain recognized disadvantages. The inherent characteristics of the reel and basket rake preclude efficient raking over uneven terrain such as is encountered in the irrigable lands of the West. The longitudinal rigidity of the reels and baskets subject conventional side delivery rakes to excessive breaking in traversing uneven terrain. Rolling and tumbling of the hay as it is moved endwardly in the basket causes some undesirable shattering and tangling.

In the fall of 1938, the plaintiff-inventor, M.A. Morrill, then engaged in hay-farming, conceived a type of rake which he believed would solve problems inherent in the use of the sulky and ordinary side delivery rakes. In the year 1944, he began the assembling of material to construct such a rake, and in 1945 began the actual construction thereof. In his initial concept of a side delivery rake, Mr. Morrill contemplated running the raking wheels thereof by power drive. However, before completing construction of his rake, and before any power drive had been constructed therefor, he had the incompleted structure of his rake pulled into a field for preliminary experimentation. To his surprise, the structure he regarded as incomplete raked hay without any power drive. The raking wheels he employed in his original structure rotated by the movement of the rake over the ground and by their cooperative effects raked hay into a windrow. On or about May 1, 1946, the construction of the original Morrill Rotary Side Delivery Rake was completed to Mr. Morrill's satisfaction, and he used the rake that year to rake approximately seven hundred acres of hay on his farm.

The original structure of the Morrill Rake provided for a rectangular support frame of rigid construction, the rear portion of which was supported by a fixed wheel. The forward portion of the frame was supported by two swivel wheels that operated on casters. The rear wheel was so mounted that its plane of rotation coincided with the direction of movement of the rake in normal operation. A draft means at the front of

the rake, consisting of a draw bar attachment in line with the rear wheel connection, provided a method for attachment to a tractor. The frame was slanted or canted at an angle to the line of travel. Crosswise of the frame a plurality of peripherally overlapping rotary raking wheels were mounted on the frame in echelon arrangement for rotation in substantially parallel planes at an angle to the direction of travel of the frame. The raking wheels were mounted for free individual rotation and independent elevational movement during earth traversal. To lighten the ground or hay engagement by the raking wheels, springs were employed in lifting relation thereto. Raking teeth, fixed or resilient, were secured to the periphery of the raking wheels. Due to the drag exercised on such teeth by the hay or ground engagement, the raking wheels rotated, resulting in a sweeping action gathering and positioning the hay in a windrow.

When plaintiff Morrill began the construction of his side delivery rake, those whom he engaged to construct its parts did not believe that the rake would function even if power-driven, and that he was throwing his money away in bringing his concept of a rake into a reality. After the rake was constructed, and even after commercial production thereof began, farmers, agricultural experts and persons engaged in the farming implement industry, on first observing the rake, did not know what it was and were very skeptical of its efficient operation. It was only after demonstrations of his rake in operation that such skepticism was dispelled. The testimony before us is strongly convincing that the type of rake conceived and constructed by Mr. Morrill was one that had never been produced before, was new, and satisfied a demand and need for a rake of that type.

On July 8, 1946, plaintiff Morrill filed application for letters patent on his invention, in the United States Patent Office.

On October 26, 1946, plaintiff Morrill entered into a license with one Morris R. Conley and Samuel J. Perry, doing business as Martin's Welding Shop, giving to the latter the right to make, use and sell commercial embodiments of the Morrill Rake in a defi-

nite territory. On August 20, 1947, said licensees, with the consent of Mr. Morrill, sold and transferred to plaintiff West Coast Sales and Service Company all of their rights thereunder. On June 5, 1947, Morrill licensed one L. H. Price, Jr., to make, use and sell commercial embodiments of his rake in territories not covered by the Martin Welding Shop License. On December 26, 1947, Mr. Morrill licensed one Allen B. Gobby to make, use and sell his invention in the States of Arizona and New Mexico. After said licenses were granted, numerous demonstrations of the commercial embodiments of the Morrill Rake were made in the Western and Southwestern part of the United States. Prior to the first series of such demonstrations, no commercial side delivery rakes embodying the principle of the Morrill Rake had been previously used or seen on the market. After the first series of such demonstrations, and during the time Morrill's application for letters patent was pending in the Patent Office, the Sargent Manufacturing Company, of Fort Worth, Texas, and a client of one Richard E. Robinson, of Omaha, Nebraska, began producing and selling a hay rake "closely imitating the invention" of Morrill. As a result thereof, Morrill filed, in usual form, a petition in the Patent Office, on May 11, 1948, to make the prosecution of his patent application "special"; which was granted by the Commissioner of Patents on May 14, 1948. As a consequence of such special prosecution, the letters patent in suit were granted August 17, 1948. There is no defense of "file wrapper estoppel" here asserted. Consequently, we need not concern ourselves with any detailed consideration of the proceedings had before the Patent Office. The "file wrapper" of the patent in suit need only be considered in connection with the issue of "prior art".

During the processing of the above letters patent before the Patent Office, statutory patent notices were placed on all Morrill Side Delivery Rakes manufactured and sold by plaintiffs. Additional facts will be hereafter stated as the issues are considered.

## Validity

Defendant in its brief limits consideration of the issue of invalidity of the letters pat-

ent in suit to the following aspects: (a) whether plaintiff Morrill originated wheel-type side delivery rakes, (b) whether Morrill discovered ground-contact rotation for such raking wheels, (c) whether Morrill only exercised mechanical skill, and (d) whether the claims of the letters patent are invalid for "broad claiming". We shall determine these issues in the above order, as presented by defendant.

Defendant contends that the evidence here establishes that side delivery rakes, having toothed raking wheels set at an angle to the direction of travel, are over fifty years old. Let that be conceded as to "tedders". This fact, standing alone, does not militate against the validity of Morrill's letters patent. Morrill's letters patent are for a new combination of elements functioning in a new and useful manner. As such, the Court is required to view the combination as a whole and not merely the individual elements thereof. Rieke Metal Products Corp. v. Barrell Fitting & Seal Corp., 7 Cir., 100 F.2d 259, 263. A patentable new combination of elements functioning in a new and useful manner is always an entity and must be considered as such. Wm. B. Scaife & Sons Co. v. Falls City Wollen Mills, Ky., 209 F. 210; Parks v. Booth, 102 U.S. 96, 104, 26 L.Ed. 54.

### Prior Art

Defendant introduced into evidence an article briefly reported in "The Implement and Machinery Review" of February 1, 1894, concerning "The Stoddard Hay Rake and Tedder," and another in the "American Agricultural Review" of the same year, reporting on a "Beck Side Delivery Rake." The devices therein referred to are revealed as being of the same general construction and appearance. Said devices have three raking wheels, mounted in an upright position, on separate, horizontal shafts of varying lengths. The raking wheels thereof are set at right angle to the direction of travel of the rake and the axle or shaft to which they are attached is held in suspension "by spring slings from an arched frame." On the "main cross shaft there is a bevel-gearing for driving the three shafts which carry" the raking wheels. The "three tedding wheels rotate in different horizontal planes, thus securing new material for successive treatment by each wheel." The raking wheels are mounted eccentrically, and the periphery, or rim thereof, is made of chain so that raking fingers project beyond the rim only at the lower position thereof. The device is mounted on a frame that is supported at three points by wheels—a pair of laterally spaced ones forward, axially fixed; and a rear wheel, which, from appearances and consideration of possible operation, is swivelly mounted.

Considered as a whole, there is as much difference in the several elements that go to make up the "Stoddard Hay Rake and Tedder" referred to in said article, when compared with the combination invention under consideration, as there is between the instant invention and present-day side delivery rakes. First of all, the raking wheels of Stoddard are power driven. They could not possibly rotate freely; they are not overlapping, and would not function in the sweeping movement to be found in Morrill's invention. The basic concept of Morrill's invention, of free rotation of plural raking wheels, arranged in echelon, displaced at an angle to the fixed direction of travel, so that they operate by ground or hay contact, is not to be found in Stoddard's or Beck's device, as defendant's own evidence clearly establishes. The power drive of Stoddard-Beck (and Bamford, hereafter considered) distinguish such devices from Morrill's invention, the same as the "feel" in Kesling's invention distinguished the latter over prior art, as Judge Stone pointed out in General Motors Corp. v. Kesling, 8 Cir., 164 F.2d 824, 830. The arrangement, position, construction and operation of the raking wheels in Stoddard-Beck would not, in our opinion, teach one versed in the art that they could be made to function if arranged and positioned as Morrill constructed his rake. "It is not enough that a prior art device approach very near the idea of the patent in suit; it must so clearly disclose the idea that it would be apparent to a mechanic of ordinary intelligence who was not examining the device for the purpose of discovering in it the idea of the pat-

702

ent." Railroad Supply Co. v. Hart Steel Co., 7 Cir., 222 F. 261, 273; National Slug Rejectors v. A. B. T. Mfg. Corp., 7 Cir., 164 F.2d 333, certiorari denied 333 U.S. 832, 68 S.Ct. 459, 92 L.Ed. 1116. No one observing or examining the Stoddard-Beck rakes could begin to visualize them as operating the same, or substantially, as does Morrill's rake.

■■■ Defendant next selects Bamford, Number 16,135 (1902) and 26,246 (1902) British Letters Patent of the prior art cited as evidence of anticipation of Morrill's letters patent. Defendant says here there is presented a frame, a three point support for the frame, and a plurality of upright, rotable raking wheels arranged in echelon at an angle to the direction of travel, by which the rakings of one wheel are delivered to one side for treatment by an adjacent wheel which duplicates the operation to form a windrow. The two Bamford patents, supra, are devices for swath turning or collecting hay. As such, the tine assemblies used for turning or collecting hay are power driven, and are so arranged that it does not seem possible for such tine assemblies to be rotable without a power drive. Bamford, in his application for letters patent, makes no claim to free rotation of his hay-gathering or tine wheels when they are thrown out of gear. There is nothing in Bamford's patent that teaches such fact. In Bamford's invention the tine assemblies are not individually mounted so that they may rise and fall in their own vertical parallel planes. The tine assemblies of Bamford are so constructed that they need a means, other than their individual mountings, to cause them to ride over rough terrain, i. e., the side and rear wheels of the frame on which they are mounted. Each unit rises and falls with the particular disks or wheels to which it is attached. The floating ability of Bamford's tine wheels, if any, and the height of their adjustment above the ground, is dependent upon the whole assembly on which they are mounted, and the caster wheel adjustment at the rear of such assembly. In rough ground the tine assemblies of Bamford are so constructed that when they rise and fall they appear as though they would be taken out of crop

engagement or be caused to dig into the ground. This is the antithesis of the teaching of Morrill's invention, as we shall hereafter demonstrate. Neither of the Bamford patents provide resilient means to lighten the ground or hay engagements of the tine assemblies as is taught by Morrill. In determining similarities and differences in devices, as affecting the validity of a patent, the Court should look at the machines and their devices in the light of what they do, or what office or function they perform, and how they perform. Bates v. Coe, 98 U.S. 31, 25 L.Ed. 68. That a prior patented device may be easily changed to produce the result of a subsequently patented device does not show anticipation. Bankers Utilities Co. v. Pacific Nat. Bank, 9 Cir., 18 F.2d 16; certiorari denied National Bank Supply Co. v. Bankers' Utilities Co., 275 U.S. 529, 48 S.Ct. 21, 72 L.Ed. 409. A reading of the claims of Morrill on Bamford considered in the light of the specifications and structures revealed in their respective letters patent could not possibly establish infringement of the latter by the former if infringement was claimed. Therefore, Bamford's tedder or hay collector does not anticipate Morrill's patent. A literal reading of the claims of Morrill on Bamford, out of context with the invention described in the specifications and drawings of their patents, does not show anticipation. Morrill's claims, when read in connection with the specifications and drawings of his invention, do not appropriate the principle and mode of operation of Bamford's device. There is a complete structural and operational difference between the two. Such structural difference, and difference between the governing principle and mode of operation thereof clearly disperses anticipation. General Motors Corp. v. Kesling, supra; F. E. Myers & Bro. Co. v. Goulds Pumps, D.C., 91 F. Supp. 475.

Defendant next selects from the prior art cited several structures which it terms "side delivery rakes of the rotable wheel type" rotated by ground contact, produced and used by one W. I. Short on his 400-acre farm in North Dakota, one Eugene Lee, Murry, Jensens and other farmers in the

same community. Each of the structures considered may be said to have been derived from the device constructed in the summer of 1940 by W. I. Short, for the purpose of turning windrows to accelerate the drying of hay. This implement consisted of an elongated frame, for attachment to the side of a tractor, having a single wheel mounted on the outer end thereof, rotable in an angular position to the direction of travel of the tractor to which it is attached. The rotation of said wheel was caused by ground contact. This implement was secured to the tractor by use of two clevises and a spring. The spring was attached to the tractor so as "to carry most of the weight of the turner" when in operation. Mr. Short visualized that in the construction of such an implement, two or more raking wheels could be attached to his frame. In the year 1943, one Eugene Lee, of Minot, North Dakota, built a windrow turner having two raking wheels, on a structure substantially as previously constructed by Mr. Short. The single windrow turner constructed by Mr. Short was similar to the windrow turner shown and described in Letters Patent 2,486,766, issued to R. A. Stenzel on November 1, 1949.

After Mr. Short had used the single wheel windrow turner, during the year 1940, he submitted a drawing thereof to International Harvester Company, of Chicago, Illinois. That company, after securing permission from Mr. Short, duplicated the construction of the device for purposes of determining its commercial possibilities, International Harvester Company, after testing the utility thereof, did not "tool up" for its commercial production, because it did not believe there was sufficient demand to warrant giving the turner further consideration. Defendant with considerable emphasis here contends that the windrow turners, constructed by Short, Lee and International Harvester Company, are in complete anticipation of the ground-contact rotation feature of Morrill's invention, and that Morrill only exercised mechanical skill in bringing that feature into his invention. Because we are convinced that such a finding is not sustained by the evidence, and

that it violates even the stretch of probabilities, we do not deem a more detailed consideration of such devices necessary. The matter that leads us to this conclusion is, that after Mr. Short submitted his device to International Harvester Company, that concern undertook to design and bring to a blueprint stage a multiple raking wheeled implement, having six raking wheels mounted in echelon arrangement, each overlapping the rearward part of its adjacent raking wheel and angularly disposed, so as to rotate opposite to the direction of travel of the frame on which it was mounted. After carrying the matter to that stage, the conclusion to be gleaned from the record is that International Harvester Company never constructed a workable model of the device; it never attempted to produce commercially such a device, and it abandoned any further consideration thereof, because its engineering department saw no utility in the device, whatsoever. It appears, from the blueprints of the multiple raking wheel device of International Harvester Company, that such raking wheels were rigidly mounted to the frame, similar to the manner Lee mounted the dual raking wheels on his windrow turner, and that the weight of the frame and entire device was placed upon such raking wheels. Because of that construction the Lee dual wheel turner did not satisfactorily function and was abandoned. We think the same reason that led Lee to abandon his windrow turner can be considered as the reason International Harvester never constructed its multiple wheel turner. It would not work. These transactions appearing in the record lead us to the conclusion that Short's windrow turner did not teach to those versed in the art of hay-raking the construction, functions and results achieved and to be found in Morrill's invention. That the engineering staff of International Harvester Company is skillful and well versed in the art of all farming implements, their operation and construction, cannot be gainsaid. Yet notwithstanding such skill, it is obvious that what they received from Short, and what they experimented with, did not teach them that Morrill's combination invention

704

was apparent, or at hand. "It may have been under their eyes" and it may be said that "they may almost * * * have stumbled over it; but they certainly failed to see it, to estimate its value and to bring it into notice." Loom Co. v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177. Consequently, we cannot and should not measure Morrill's combination by hindsight and say that the Short, Lee, Stenzel or any of the other single windrow turners claimed as prior art anticipates Morrill's combinations. Lee's experience, and International Harvester Company's considerations, experiments and abandonment discredit this contention, and lead us to conclude otherwise. G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 115 F. 2d 958.

Defendant cites in its answer a total of twenty-seven prior art patents, two publications and five prior art structures. In its brief it confines its comments to the two publications, five prior art structures derived from Short's device, Bamford's two British Patents and Stenzel's U. S. Patent, as prior art anticipation. Having examined the remaining prior art cited by defendant, we believe it has, by confining such issue to a consideration of the foregoing, ventilated all the prior art, worthy of presentation, not previously considered by the Patent Office. That presented for argument did not anticipate Morrill's combination.

What has been said concerning prior art cited partially disposes also of defendant's contention that "Morrill exercised only mechanical skill." It is defendant's contention that Morrill's rake involves nothing more than substitution of Short's "ground-contact-rotated" raking wheel, in the spring slings of the Stoddard wheel-type side delivery rake, or the substitution of a plurality of the "ground-contact-rotated" raking wheels of the Stenzel patent (2,486,766, issued November 1, 1949) for the "reel" of the Ferguson patent (2,486,-183, issued July 12, 1949). None of the devices or patents cited by defendant, in construction, appearance or operation, begins to approach the idea expressed in Morrill's rake. The idea of a plurality of

freely rotating wheels, overlapping, mounted on a movable frame in echelon parallel planes, at an angle to the direction of travel so that they also have individual elevational movement to the ground traveled apparently did not dawn on the makers of such prior art devices, and there is nothing in their devices or letters patent which would suggest it to a mechanic of ordinary intelligence, unless he previously had an idea and was examining it for that purpose. Topliff v. Topliff, 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed. 658. If he had such an idea when examining said devices he got it from a "flash of genius", and not from prior art. That Morrill's invention only involved mechanical skill cannot be determined by hindsight. "Knowledge after the event is always easy, and problems once solved present no difficulties". Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 435, 31 S.Ct. 444, 447, 55 L.Ed. 527. None of the art cited, individually or collectively, teaches what Morrill "stumbled on." "It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions." Topliff v. Topliff et al., 145 U.S. 156, 161, 12 S.Ct. 825, 828, 36 L.Ed. 658; Crowell v. Baker Oil Tools, 9 Cir., 153 F.2d 972. Short's ground-contact-rotated raking wheel did not suggest to the engineers and mechanics of International Harvester Company that it could be plurally mounted so as to freely rotate and have an elevational movement for each raking wheel when mounted so as to lightly rake over the ground traversed. If their staff of patent counsel and engineers could not observe such things in the short device or the prior art, of which they are presumed to have had knowledge, then how can it be seriously contended that Morrill only exercised mechanical skill in the construction of his rake? Morrill had a concept of a rake that was not to be found in prior art. Not being found therein, Morrill's combination amounts to invention and not the mere ex-

ercise of mechanical skill. The fact that an eager search was apparently being made by engineers of International Harvester Company to find a multiple raking wheel device following Short's concept leaves no doubt in our minds that what Morrill found was not obvious to them, and involved discovery and invention and not aggregation or mere mechanical skill. Faulkner v. Gibbs, 9 Cir., 170 F.2d 34, affirmed Faulkner v. Gibbs, 338 U.S. 267, 70 S.Ct. 25.

In maintaining that Morrill's invention only involved mechanical skill, or aggregation of parts previously known to the art, defendant in its brief states, "There may be some differences between the prior art and the device of the claims (of the patent in suit) capable of removing the question from that of technical anticipation" but, even so, Morrill cannot escape the claim of aggregation, "multiplication, duplication or omission of parts" from the prior art. Deft. br., pp. 17, 18. If Morrill's invention is not "technically anticipated" by the prior art, how can it be said that such art teaches one versed therein that by only a "multiplication, duplication or omission of parts" from such art it would lead one mechanically inclined to Morrill's device? The prior art must disclose the idea before it would be apparent to a mechanic that he could by "multiplication, duplication, or omission of parts" bring the idea into fruition. If he already had the idea, he would not be getting it from the prior art, but from his own imagination or from some other source. If that idea is not technically anticipated in the prior art, then it takes more than mere mechanical skill to bring it into fruition. The fact of such accomplishment, novelty appearing, rather than method of accomplishment, presents patentable invention and not mere mechanical skill. The novelty of Morrill's patent is not that it rakes a wider swath than Short's device, or any of the other prior art. The novelty is that it rakes such a swath over uneven terrain and that while so doing it operates in a fashion different from all previous rakes or tedders. Short did not have the idea of multiplication of raking wheels, separately mounted on a movable frame so they will separately freely rotate,

vertically and reciprocally over rough terrain. His multiplication idea was such as Lee adopted, whereby the frame as a whole, on which the raking wheels were mounted, would rise and fall together in a unitary operation. That is the only concept that a mechanic versed in the art would get from Short and apparently is what was received by International Harvester Company's engineers when it multiplied such device, and found it unworkable and not worthy of construction. At most, it was a mere suggestion. Wm. B. Scaife & Sons Co. v. Falls City Woolen Mills, 6 Cir., 209 F. 210, 218. It seems now a simple thing to substitute for Short's raking-wheel those individually mounted as in Morrill's invention. The fact remains that such substitution, if mere substitution is conceded, involved both the thought and consideration necessary to structurally adapt them and make them useful, workable and patentable; and the lack of anything more than mechanical skill is not justified by the record, so as to say that there is here lack of invention on that ground. It took fifty years, step by step, through the trial and error method, to produce the novelty of Morrill's Rake, and we perceive such progression to spell invention. Cf. Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., 7 Cir., 132 F.2d 812. "The novelty of an invention is not negatived by a prior useless process or thing, nor is anticipation made out by a device which might, with slight modification, be made to perform the same function. The invention must have been complete, and capable of producing the result. One should not be deprived of the results of a successful effort merely because someone else has come near it." Diamond Patent Co. v. S. E. Carr Co., 9 Cir., 217 F. 400, 405.

### Broad Claiming

Defendant in its brief charges that the claims of the letters patent in suit are invalid because of "broad claiming". The contention is made that said claims being "free from ambiguity as to the 'ground-contact-rotation' feature" of the raking wheels, because no specific call for such a method of rotation is made in any of the claims granted, the claims in question "cannot be construed as limited to a structure embodying

(that) feature in order to sustain their validity"; and, that "if (the. claims as made) read in terms upon the prior art without such limitation by interpretation, they must be held invalid."

In support of this contention defendant states that because the claims are unambiguous in the above respect, the claims as made may not be interpreted in light of the specifications and drawings to which .they relate. There is no question about the rule that claims made in letters patent cannot be enlarged or limited by the specifications and drawings. Howe Machine Co. v. National Needle Co., 134 U.S. 388, 394, 10 S.Ct. 570, 33 L.Ed. 963. But even though claims are "free from ambiguity," that is no reason for setting aside the rule that the specifications and drawings as disclosed in letters patent may be referred to and considered in connection with the claims thereof for the purpose of better understanding the meaning of the claims as made. Permo, Inc. v. Hudson-Ross, Inc., 8 Cir., 179 F.2d 386. The eighteen claims in suit, like claims to be found in most letters patent, if read without regard to the specifications, or the structure for which they make call, are not only ambiguous, but doubly confusing and unintelligible. However, if read with reference to the disclosure of the specifications and drawing, they are readily understandable by one versed in the art to which they relate, and it is only in that sense that it may be said they are unambiguous.

There is no merit to defendant's contention that claims made to the invention of Morrill are not to be limited to a side delivery rake, the raking wheels of which are freely rotated by the drag exercised thereon by ground or hay engagement. Anyone who tries to fairly understand the claims as made can readily determine from the specifications and drawings to which the claims relate, without any difficulty .whatever, that the raking wheels in the structure of necessity are rotated by ground contact from the movement of the rake over the ground or hay. Such movement and rotation of said raking' wheels is a fully anticipated functional operation of the claims of the invention, as disclosed by the specifications and drawings thereof and as such it need not be specifically called for in the claims. Defendant concedes as much, for in asserting invalidity to certain specific claims it states that the call therein "that the raking wheels engage rakable substance is a mere obvious recitation of fully anticipated operation" and does not aid those particular claims as claiming invention. P. 36, Deft. br. If the raking wheel engagement with a rakable substance is an anticipated operation of Morrill's invention, then likewise the rotation of the raking wheels is an anticipated operation and the claims of the letters patent in suit cannot be said to be invalid because the means necessary to make such raking wheels rotate are not called for in the claims. Claims to an invention may be valid without stating all the means necessary to make it operative. If the claim is one that can be read upon the invention, appropriate means for making it operative will be understood, and in such a case any appropriate means for making it operative will be implied. Deering v. Winona Harvester Works, 155 U.S. 286, 302, 15 S.Ct. 118, 39 L.Ed. 153. The only appropriate means for making the raking wheels of Morrill's invention rotate on their axle while his rake is moving forward is the drag of the raking wheels over the ground or hay contacted and, as such, it is to be understood as a claim of his invention. Absent a specific claim of power drive, the only presumption that can be made is that the raking wheels "rotate" by contact with the terrain or hay traversed. Stenzel, 2,486,766, relied on by defendant as prior art anticipation, makes no claim to such operational function, but like Morrill's letters patent it must be an understood function thereof, else defendant could not contend as it does that Stenzel is found in the prior art and anticipates Morrill.

Defendant makes the further contention that certain specific claims are too broad and make claim to unpatentable combinations. We shall dispose of such contentions in connection with the issue of infringement. We find no merit in defendant's contention that the letters patent in

suit are invalid for failure to call for "ground-contact-rotation" in the claims.

### Infringement
### Scope of Patent

The scope of Morrill's patent as measured by the claims made to his invention is in reference to a rectangular frame mounted on two forward wheels and a rear wheel. The two forward wheels are caster wheels; the rear wheel, is fixed or fixable so that it cannot turn, and together with a draft means, steers the frame at the proper angle as it is drawn over the ground. The raking wheels are mounted on the frame in parallel vertical planes so that the peripheries thereof overlap each other. The raking wheels are individually and independently mounted on frames so that they move up and down, the weight being counterbalanced by springs for floating action. The raking wheels are angularly disposed in echelon to the line of travel of the frame, which is perpendicular to a line between the hitch member of the frame and the rear rudder wheel. With the machine so constructed, when it is drawn forward, the drag of the rake wheels on the ground, or hay, causes the rake wheels to turn in a rearward direction at the bottom, producing a sidewise movement which moves the crop from one wheel to another and forms a windrow at the side end of the machine. All of the eighteen claims in suit are limited to such a combination and make claim to a feature thereof not found in other claims. Claims 1 and 23 have been selected by plaintiff as representative of the eighteen claims as to which infringement is here charged. We believe them to be representative. They read as follows:

"1. In a side delivery rake having a forwardly movable draft frame having a direction control means operably associated therewith, a plurality of rotary raking means arranged in echelon in substantially parallel, erect planes angularly displaced from the normal direction of movement of the frame, and mounting means borne by the frame and individually mounting the raking means for floating movement in

their respective planes in response to depressions and elevations in terrain traversed.

\* \* \* \* \* \*

"23. A side delivery rake comprising a mobile frame, means attached to said frame supporting the frame for ground traversing operation and maintaining the frame in a substantially constant attitude relative to the ground traversed, said means including directional control means, and a plurality of peripherally overlapping freely rotatable raking wheels mounted on said frame in echelon arrangement with their peripheries normally in tangential proximity to but free of the ground traversed, and each raking wheel being rotatable in a plane at an angle to the direction of travel of said frame, said raking wheels being adapted to engage with a rakable substance on the ground."

### The Accused Device

The accused device has a triangular main frame, instead of a rectangular one, mounted on two forward wheels and a single rear wheel. One forward wheel is of a caster type. The other is mounted on a vertical pivot and the vertical movement thereof is controlled by a rod connected to a portion of the wheel yoke and to the draft tongue of the frame. The rear wheel is adjustable about a vertical axis which in normal operation is fixed and acts as a rudder, or direction control, for the frame. The raking wheels are separately mounted on the frame by crank arms, so that when the raking wheels move up and down they move in a vertical plane to the frame. Each crank arm is connected to a spring, one end of which is secured to the frame to provide floating movement to the raking wheel assembly. The raking wheels of the accused structure are angularly disposed in echelon arrangement, the peripheries of which overlap. They rotate in the same parallel vertical plane as the Morrill Rake and find such operation by ground-contact the same as does Morrill's Rake, thus creating a crop engaging movement that discharges a windrow at the rear side thereof.

It can be seen that the accused device is structurally substantially the same as Morrill's Rake, and the same basic principle for its mode of operation is employed to produce the same results as does the invention of Morrill. The means of attaining such result, and the manner in which the several parts thereof operate and cooperate to produce the result are the same, or the equivalent to those employed by Morrill. Except for the steering connection connected to the front carrying wheel; the rear wheel assembly, and the angular displacement of the frame structure, the general construction of the two machines may be said to be the same and to operate and function in the same manner. The above differences do not differentiate the accused device from that of the claims in the letters patent in suit. A structural difference between a patent and accused device does not avoid infringement if the accused device appropriates the principle and mode of operation of the patent and the same result is thereby attained. Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 99 F.2d 1, 5. The substantial equivalent of a thing is the same as the thing, itself, so that if two devices work in substantially the same way, and accomplish substantially the same result, they are the same though they may differ in form or shape. Freeman v. Altvater, 8 Cir., 66 F.2d 506.

To avoid infringement, defendant points out several elements of its machine that it says are teachings of abandoned or expired prior art, and contends that such elements distinguish its rake from the combination claimed by Morrill in his letters patent. For instance, defendant says that its alignment of raking wheels is on an elongated beam of the frame of its rake, and that the mounting of the raking wheels thereon in echelon to rotate in vertical planes is the arrangement followed by International Harvester Company in the blueprint of the multiple wheel device drawn from Short's concept of a tedder. We have heretofore ruled, in considering the question of validity, that the blueprint of the International Harvester Company's multiple raking wheel device was an experiment, imperfect and never perfected. As such, it does not serve either as an anticipation of Morrill's invention, nor as a part of the prior art that defendant may claim it followed in construction of its raking machine. G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., supra, 115 F.2d 964; Smith v. Snow, 294 U.S. 1, 17, 20, 55 S.Ct. 279, 79 L.Ed. 721. Defendant further contends that after following the teaching of International Harvester Company, as to the arrangement of its raking wheels, it then became necessary to provide ground wheel support for its frame to make it workable, and in doing so it followed Bamford (Br. Pat. 16,135 and 26,246) and utilized the support wheels as there disclosed. Next, it says that it made use of the crank arrangement as in Beck (U. S. Pat. 468,382) as a means for rotation of its raking wheels, and used the spring arrangement of Sperry, 845,204; Roos, 1,251,824; Shelton, 1,817,851; and of Stoddard, to provide resilient suspension of its raking wheels. Finally, to avoid infringement, it says it makes use of raking teeth on its raking wheels not found in Morrill's invention. As to the latter, Morrill's combination makes no claim to invention of raking teeth, as such. Patented, or unpatentable, raking teeth cannot save defendant from infringement if it has otherwise adopted the basic principle of Morrill's combination in its machine. That defendant cannot avoid infringement of the combination claims of the patent in suit by pointing out separate elements to be found in the prior art, of which it makes use in its device, is well settled patent law. Mere changes in the form of a device, or of some of the mechanical elements of a combination, will not avoid infringement, where the principle or mode of operation of the invention is adapted. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 106 F. 693; Ide v. Trorlicht, Duncker, & Renard Carpet Co., 8 Cir., 115 F. 137; Smith v. Mid-Continent Inv. Co., 8 Cir., 106 F.2d 622; Vallen v. Volland, 8 Cir., 122 F.2d 175; Wheat v. Ford Motor Co., 8 Cir., 118 F.2d 612, certiorari denied 314 U.S. 645, 62 S.Ct. 86, 86 L.Ed.

518; Koochook Co. v. Barrett, 8 Cir., 158 F.2d 463. In Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 41-43, 50 S.Ct. 9, 12, 74 L.Ed. 147, it is said: "There is a substantial identity, constituting infringement, where a device is a copy of the thing described by the patentee, 'either without variation, or with such variations as are consistent with its being in substance the same thing.' Burr v. Duryee, 1 Wall. 531, 573, 17 L.Ed. 650. Except where form is of the essence of the invention, it has little weight in the decision of such an issue; and, generally speaking, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result. * * * Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.'" See also Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854.

We have held Morrill's letters patent valid and not anticipated by prior art, as not involving mere mechanical skill, and not invalid for "broad claiming." Therefore, if any one or more of the claims of said letters patent may be read on defendant's accused device, then the burden of proof placed on plaintiffs has beeen sustained and infringement is here established. Cissell v. Cleaners Specialties, D.C., 81 F.Supp. 71, 75, and cases therein cited. Comparing the accused device with the teaching of claims 1 and 23, it is readily observed that defendant's "Roto Rake" clearly infringes such claims. Both said claims are readable on the accused device, as is apparent from the foregoing description thereof. Defendant by its evidence does not undertake to demonstrate differently. In fact, its expert witness, Fenton, admits to a reading of said claims on defendant's device. This augurs much for a strong case of infringement. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 53, 43 S.Ct. 322, 67 L.Ed. 523.

As stated above in the history of plaintiffs' letters patent, prior to the first series of demonstrations thereof, no commercial side delivery rake embodying the principle of the Morrill Rake had been previously used or seen on the market. After Sargent Manufacturing Company, of Fort Worth, Texas, began construction of its side delivery rake, which "closely imitated the invention" of Morrill, one William Wingfield, in early 1948, procured a Sargent Rake and took it to Albuquerque, New Mexico, had the name "Wingfield Rake" printed thereon and began selling and dealing in such rakes under that name. It appears in the testimony that the sales manager of defendant learned of the "Wingfield Rake" and brought it to the attention of other officers of defendant. Wingfield pretending to be the originator of the rake carrying his name, defendant through its officers entered into negotiations with him to acquire rights to manufacture, produce and sell the "Wingfield Rake." From that source, it appears, defendant first acquired knowledge of side delivery rakes embodying the basic principles of the invention of Morrill. Without a detailed laboring of the matter as to how defendant acquired such knowledge and began the manufacturing and production of its "Roto Rake," we think it pertinent to the question of infringement to state, that before it began to manufacture the same, it acquired knowledge of "Morrill's Rake," of the pendency of his application for letters patent thereon, and received advice that a device embodying the basic principles of Morrill's Rake was probably patentable. After acquiring such knowledge, defendant attempted to obtain from plaintiff West Coast Sales and Service Company the right to distribute the Morrill Rake in the territory of this Court. Testimony concerning this transaction is convincing that before defendant first began production of its "Roto Rake" it had full knowledge that Morrill was the inventor of the side delivery rake embodying the basic principles that caused defendant to become interested in and undertake the manufacture and production of its rake. Such evidence, we think, warrants a finding of intentional,

venturesome infringement so as to authorize the assessment of damages herein and allowance of reasonable attorneys' fees, in addition to injunctive relief, if plaintiffs have not misused their patent rights.

Defendant's "Roto Rake" clearly infringes the combinations claimed in Claims 1 and 23 of the patent letters in suit. Both said claims are readable on the accused device. Said accused device, embodying the elements of the combination of those two claims, operating and producing thereby the identical results of the invention to which they relate presents a clear case of infringement.

 There remain to be considered the remaining sixteen claims of the letters patent here sued on. In the following analysis of claims we only advert to elements found in the combination called for that individually distinguish each claim and do not specifically appear to be found in other claimed combinations. Each of the claims, infringement of which is here found, calls for combinations which we believe to be patentable. In addition to calling for the specific elements hereafter stated, they describe in combination some novelty to be found in Morrill's invention and readable thereon. "In a combination patent the different elements making up the complete device may be claimed in such number and in such varying combinations as the inventor considers necessary for his protection, provided always that when thus claimed the patentee in each instance discloses a complete, new, and operative combination." Farrington v. Haywood, 6 Cir., 35 F.2d 628, 630.

Claim 2—Calls for overlapping raking wheels, elevational movement of raking wheels, resilient means whereby they lightly engage terrain, and independently rise and fall.

Claim 3—Refers to rim of raking wheels disposed to ride over encountered hay, compress it downwardly against earth, having outwardly extended raking teeth for hay engagement.

Claim 4—Calls for support for frame at three points for earth traversing movement and to maintain frame a predetermined distance above the earth and in substantially constant attitude relative thereto.

Claim 5—Calls for means for effecting connection of frame to draft appliance; swivel wheels supporting forward portion of frame; a rear wheel supporting frame constrained to a plane of rotation in substantial alignment with the normal direction of movement of the rake.

Claim 13—Claims the raking wheels mounted "in substantially erect parallel planes in predetermined angular relation to the directional control means." It may be that this is covered in other claims, but the "predetermined angular relation" called for is more specific than "angularly disposed" and should be sustained.

Claim 15—Calls for the "directional control means in spaced relation to the connection means and in alignment therewith." This adds to a more specific understanding of the invention and is sustained by the specifications and drawings. This claim is not vague or made unintelligible by its dual reference to "directional control means," when considered with the specifications and drawings.

Claim 18—Calls for "a rudder wheel fixedly mounted by the frame in ground engagement." This is construed as a more descriptive portion of the direction control means. Infringement thereof cannot be avoided merely by means of its attachment to the frame.

Claim 21—Calls for the "ground engaging rudder member mounted on the frame in fixed angular relation thereto." This is further descriptive of the relation of the rudder wheel to the frame and with other elements called for in combination and appears to be infringed by defendant's combination.

Claim 22—Calls for means attached to frame to resist forces tending to shift said frame angularly from line of travel of prime mover.

 Each of the combinations called for in Claims 1, 2, 3, 4, 5, 13, 15, 18, 21, 22 and 23 are readable on the accused device. Defendant makes no contention otherwise. The attack made upon the above claims is not that they are not readable on its "Roto Rake" but that they are too broad and call for individual elements that are not patentable. In light of the combination called for

in such claims a contention that specific elements therein referred to are not patentable cannot be sustained. The combinations of such claims stand or fall as a whole and not as to isolated elements thereof. The above claims are broad. The broadness thereof might imperil their validity, if the operative combination of Morrill's invention were less broad than the claims. This is not the case. Defendant's operative combination is just as broad and as broad as the calls made in the claims above referred to. Defendant has not pointed out, and we do not believe that it can do so, that the broad terms thereof are not readable on its device. Broad though they may be, they describe and make claim to the invention that Morrill made, and have a wide scope as to that mechanical arrangement. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 416, 28 S.Ct. 748, 52 L.Ed. 1122. They are not to be construed "with legalistic rigidity." Bianchi v. Barili, 9 Cir., 168 F.2d 793, 799.

█ Claims 11, 14 and 16 of the letters patent in suit are duplicitous and covered by Claims 1 to 5, inclusive. Claim 12 is covered in Claim 5. Claims 17, 19 and 20 call for an "elongated mobile frame," among other things. Such call gives form to these last-mentioned claims, and to be infringed the accused device must be in that form. The accused device is mounted on a triangular frame. To infringe a combination claim, all of the elements in the combination should be made to read on the accused device. McKays Co. v. Penn Electric Switch Co., 8 Cir., 60 F.2d 762, 768.

Misuse of Patent Rights

█ By its defense XIV defendant alleges "that plaintiffs' license agreement identified in Paragraph III of the complaint contains provisions and covenants which characterize the said agreement as being against the public interest and, therefore, precludes" the granting of any equitable relief to plaintiffs in this proceeding. The license agreement so referred to in the complaint is the one plaintiff Morrill entered into with Perry and Colley, on October 26, 1946, and later assigned to West Coast Sales and Service Company, in respect to manufacturing and selling Morrill Rakes. Though

the license agreement there referred to is before the Court, having been introduced in evidence as part of the plaintiffs' case, defendant makes no attempt in its brief, or otherwise, to point out in what respect said license agreement has the illegal effect defendant so attaches to it. Instead, defendant introduced in evidence, without objection, a certain license agreement entered into by plaintiffs with one Louis Crowe, whereby, among other things, it is revealed that plaintiffs in December, 1948, filed an infringement action against Crowe, which was terminated by a Consent Judgment, conceding the validity of the letters patent in suit. It appears that Crowe had invented a "V" type side delivery rake dominated by Morrill's letters patent. In settlement of the above-referred-to infringement action, Crowe assigned to plaintiff Morrill all of his rights in and to his invention of a "V" type side delivery rake, Morrill, with the consent of West Coast Sales and Service Company (his exclusive licensee) granted to Crowe a non-exclusive, non-transferable license to manufacture and sell rotary side delivery rakes of the "V" type comprising the subject-matter of his invention, patent application for which was to be prosecuted by Morrill. In consideration thereof, Crowe agreed not to infringe Morrill's original letters patent, and to purchase from West Coast "two model L. R. rakes, and such additional parts as may be required" to be used in the manufacture and production of "each and every 'V' rake produced "by him under said agreement. It was contemplated by said license agreement that in so doing Crowe would have the frame of one Model L. R. rake left over. Crowe was given "the right to purchase such additional parts from West Coast as may be required to complete a Model L. R. rake which Crowe (was) authorized to sell at West Coast's regular listed retail sale price without the payment of royalty in addition to the royalty paid in the purchase of the requisite parts" therefor. Crowe's purchase price for Model L. R. rakes was to be "West Coast's regularly established dealer's cost price" and his "purchase price for the aforementioned parts" was "West Coast's regularly established dealer's cost price less ten percent (10%)."

Crowe was licensed to sell such "V" type rakes produced by him in the same territory in which West Coast was licensed to sell rakes manufactured and produced by it under the letters patent in suit. West Coast had the right under said agreement, if it desired to purchase "V" rakes and parts therefor from Crowe, and to do so at his regularly established distributor's purchase price, or it could produce, or have produced, "V" type rakes if it desired. It is the above features of the Crowe license that defendant contends establishes misuse of patent rights by plaintiffs. Before closing the evidence herein, plaintiffs introduced in evidence documents revealing a modification of the above Crowe license, effective as of January 1, 1950, and deleting therefrom all matters which defendant contends establishes said license agreement as being against public policy and a misuse of patent rights. As so modified, said license agreement is no longer subject to the contention defendant makes against the provisions of the original Crowe license.

Defendant premises its defense that plaintiffs have misused the grant of the letters patent in suit, solely upon the provisions of the original Crowe license agreement. There is no evidence in this case as to the nature and extent of any business transactions carried on or conducted by any of the parties pursuant to any provision of said agreement. We are wholly uninformed as to whether West Coast ever sold to Crowe any commercial models of the side delivery rake manufactured by it under the letters patent in suit; whether Crowe ever purchased any parts for such rakes; or, whether Crowe ever manufactured, produced, or sold to the public "V" type side delivery rakes as contemplated by the above license, and, if so, how they were constructed, or what not. In the center of such a vacuity, defendant in its brief undertakes a searching analysis of Crowe's original license and attempts to establish by argument only, that it manifests *per se* misuse of patent rights by plaintiffs. The argument of defendant takes this tack. It says the original agreement "is an outstanding example of taking advantage of the plight of an independent inventor," forcing him to consent to a de-

cree of infringement not judicially proven, and reveals, "the first step in an apparent program designed (by plaintiffs) to preempt the entire field against the public generally"; that it contemplated and has "the seeds of a potentially powerful monopoly, extending far beyond that granted by issuance of the patent in suit." From the bed of evidence before us, we cannot find the germination or radiance defendant says it perceives in said non-exclusive license agreement. All that is here before the Court is a single license agreement entered into by a patentee and his immediate exclusive licensee, with another who, in turn, is authorized to also make use of the combination of the patent in suit in the production and construction of a "V" type of rake that apparently is not wholly covered by the grant of the instant letters patent. By such agreement, the last-mentioned licensee agrees to use two L. R. rakes manufactured by a previous exclusive licensee under the letters patent in suit. He also agrees that in the construction of such "V" type rake he will buy other parts therefor, essential to its construction, from said exclusive licensee, at its regularly established dealers' cost price, and that if he has any parts left over he agrees to reconstruct such parts, together with other parts purchased from said licensee, into a type of rake covered by the patent in suit and sell the same at the same price the immediate exclusive licensee under the patent in suits sells the same type rake to the public generally. The relationship between plaintiff Morrill and Crowe under said agreement is that of licensor and licensee. The agreement recognizes that West Coast is not the owner of the letters patent in suit and it appears therefrom that the arrangement whereby West Coast was to furnish parts to Crowe for the assembling of his "V" type rake was that of manufacturer and dealer. The agreement does not attempt to fix the price at which Crowe was to sell "V" type rakes, nor does it require anyone after Crowe to purchase parts therefor from West Coast. When "V" type rakes manufactured by Crowe are placed on the market they are freed of any restrictions as to resale or manner of use. It appears that such a special type of rake would

be one placed on the market in complete competition to the type of rake manufactured by West Coast under the patent in suit. In light of this latter fact, we cannot perceive in said agreement the restraints in trade or the "maintenance and enlargement" of an attempted monopoly that is condemned in the cases relied on by defendant, of which Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363, is an example. The agreement *per se* does not establish that competition has been substantially lessened by the fact that Crowe was thereby obligated to receive manufactured articles, patented or unpatented, from West Coast. After he received such parts he was authorized to use them in combination to produce the combination of the patent in suit and sell that combination in competition to West Coast's commercial embodiment thereof. No monopoly, or restriction of competition in the grant of the letters patent in suit, results therefrom, in our opinion.

But if we assume without further laboring the point that the provisions of the original Crowe agreement were objectionable and if acted upon by the parties thereto would have established an enlargement of the monopoly granted Morrill by his letters patent; the evidence here is that plaintiffs, by agreement with Crowe, effective as of January 1, 1950, have deleted from the license granted to him, all parts thereof as to which defendant contends was the maintenance of monopolistic practice. Absent proof of any action taken by the parties under the Crowe license, plaintiffs have by such deletion purged said agreement, as well as themselves, of any claimed misuse of patent rights, and no prejudicial effect of said agreement to the public generally, to defendant or any other individual, being established prior to such purging, if purging was necessary, we do not believe they should be debarred from recovering their damages herein when positive proof exists of infringement of their patent rights by defendant.

The picture of present or potential damages defendant attempts to present in its brief on the issue of misuse of patent rights is not to be found in the background of the evidence. Therefore, we do not believe that

the defense of unclean hands has been sustained by essential proof in this case. Standard Oil Co., Indiana, v. U. S., 283 U.S. 163, 51 S.Ct. 421, 75 L.Ed. 926; National-Aluminate Corp. v. Permutit Co., 8 Cir., 145 F.2d 175.

"Improper use does not invalidate a patent * * * (and) does not vest an infringer with a license for the life of the patent, for if a patent owner purges himself of the improper business practices he may then enforce his patent and recover damages for infringement occurring thereafter." Novadel-Agene Corp. v. Penn., 5 Cir., 119 F.2d 764, 766, 767.

So far as the evidence in this case reveals, all evil effects, if any, of the Crowe license were dissipated by the amendments the parties made thereto. Though effective as of January 1, 1950, such amendment had the effect of purging from its inception "improper business practices" plaintiffs may have committed by the entering into of the Crowe license. There is no evidence to the contrary.

Plaintiffs are entitled to recover all damages accruing to them by reason of the infringement of their letters patent by defendant. Counsel will prepare formal findings of fact and conclusions of law in accordance with the foregoing. Until then, entry of formal judgment herein will be withheld.